UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORDAN STRASSMAN, in his capacity as trustee of the Robert H. Strassman Revocable Trust and in his individual capacity, and THE ROBERT H. STRASSMAN REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>ESSENTIAL IMAGES, d/b/a Essential Images Fine Art and Antique Appraisal Service, JOHN W. ROCKAFELLOW, and SALLY ROCKAFELLOW,<br><br>Defendants. | Civ. No. 2:17-cv-4227-KM-JBC<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiffs Jordan Strassman and the Robert H. Strassman Revocable Trust allege that they engaged defendants Essential Images, John W. Rockafellow, and Sally Rockafellow, to appraise and sell personal and Trust property. Plaintiffs claim that defendants have failed to provide an accounting of sales and have not forwarded sale proceeds. Plaintiffs first brought an action in the Superior Court of New Jersey, where the Judge dismissed all claims by the Trust for lack of personal jurisdiction and all of Strassman's personal claims for failure to state a claim. Plaintiffs then filed this federal court action.

1

Now before the court is defendants' motion to dismiss the complaint on grounds of collateral estoppel[1] and failure to state a claim.

## I. BACKGROUND[2]

### A. Factual History

Plaintiff Jordan Strassman ("Strassman"), a New Jersey resident, is the trustee of the Robert H. Strassman Revocable Trust ("Trust"), whose situs is in Virginia. (Compl. ¶¶ 9-10). Strassman contacted defendant Essential Images, a "fine arts and antique appraisal service" based in Littlestown, Pennsylvania and Washington, D.C., to sell Trust assets as well as his personal property. (Compl. ¶¶ 11, 22-23). Strassman had several phone conversations with John W. Rockafellow ("Rockafellow"), a Pennsylvania resident who owns or works for Essential Images. (Compl. ¶¶ 12, 23). Sally Rockafellow, too, is a Pennsylvania resident who owns or works for Essential Images. (Compl. ¶ 13).

On October 8, 2012, Rockafellow traveled to Virginia to review and inventory the Trust property. (Compl. ¶ 24). Rockafellow valued the property and stated prices that he could sell items for. (Compl. ¶ 24). On October 23,

---

[1] I use the phrases "issue preclusion" and "collateral estoppel" throughout this opinion "interchangeably to refer to the rule ... providing the preclusive effect to a fact, question, or right determined in a prior case." *Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231 n.2 (3d Cir. 1995).

[2] All facts and inferences are made in favor of the nonmoving party on a motion to dismiss. Citations to the record are abbreviated as follows:

"Compl." = Complaint (ECF No. 1)

"Def. Br." = Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint (ECF No. 8)

"Def. Ex. B" = Complaint in Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 8-2)

"Def. Ex. C" = Order in Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 8-3)

"Def. Ex. D" = Motion for Reconsideration Order in Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 8-4)

"Pl. Ex. A" = Transcript of November 28, 2016 Motion Hearing on Motion for Reconsideration, Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 13-1)

2012, Strassman retained Essential Images to complete the appraisal of Trust property. (Compl. ¶¶ 24-25). Pursuant to the agreement, Essential Images would keep a twenty percent commission on the total sale. (Compl. ¶ 27). Essential Images would send the Trust sale proceeds within ten days and communicate sales and inventory information to Strassman. (Compl. ¶ 27). If any items were not sold within 120 days, they would be returned to the Trust within seven working days thereafter. (Compl. ¶ 27).

Rockafellow took items from the Trust's Virginia property to Pennsylvania and Washington, D.C. for sale. (Compl. ¶¶ 33-34). Strassman alleges that Rockafellow took possession of items that were not part of the agreement and failed to inventory certain items. (Compl. ¶¶ 28-31). At that time, Rockafellow represented that he had sold several items. (Compl. ¶ 37). Rockafellow also provided Strassman with a detailed receipt that showed each item sold, the value of each sale, the total dollar volume for the day, Essential Images' commission, and the net amount due to the Trust. (Compl. ¶ 37).

After the Virginia transactions, Strassman agreed that Rockafellow would travel to New Jersey to appraise and sell the personal property of Strassman and his parents. (Compl. ¶¶ 35-36). On December 18, 2012, representatives of Essential Images came to New Jersey to Strassman's parents' residence, Strassman's storage unit, and Strassman's residence to collect personal property for sale. (Compl. ¶ 36). Strassman asked Rockafellow whether they needed to form a separate agreement or contract. (Compl. ¶ 36). Rockafellow said, "You are covered by the original contract. You signed it personally." (Compl. ¶ 36).

Later, Rockafellow told Strassman he had sent an email that listed the items sold. (Compl. ¶ 39). Strassman had not received the email and verified his email address. (Compl. ¶ 39). Rockafellow forwarded a "test" email, which Strassman confirmed receiving. (Compl. ¶ 39). Strassman still did not receive an accounting of the items sold. (Compl. ¶ 39). Rockafellow explained that his computer system was not working. (Compl. ¶ 39).

3

On April 29, 2013, Strassman sent Rockafellow an email that stated, "I still have not received any of the e-mails" and therefore "have no idea what has or has not been sold so far." (Compl. ¶ 39). Rockafellow responded that everything had been sold except for the camera equipment and the trailer. (Compl. ¶ 40). Rockafellow then stated, "I have the trailer sold ... I have buyers for most of the other pieces from the house ... I am working on finalizing the sale of the garage equipment." (Compl. ¶ 41). In June 2013, Rockafellow sent an email to Strassman that stated, "The sale that I'm having with your camera equipment is on the weekend starting on the 28th ... I've had a lot of interest so far and believe it will all sell." (Compl. ¶ 42).

Strassman continued to request that Rockafellow send him checks from the sale proceeds. (Compl. ¶ 43). Rockafellow left a voicemail in July 2013 stating that someone from Essential Images would send him a check as soon as possible. (Compl. ¶ 43). In September 2013, Rockafellow sent Strassman an email that stated, "I am working on your estate and will get a check out to you sometime this week." (Compl. ¶ 43). Rockafellow also told Strassman by phone that he would send a check immediately. (Compl. ¶ 43).

After months of not receiving checks, Strassman sent a written demand for payment. (Compl. ¶ 44). Essential Images has represented that almost all of the items were sold and that Strassman should have received an accounting for those sales. (Compl. ¶ 45). Strassman has still not received an accounting of the property transferred to defendants or checks for the sales of the property. (Compl. ¶¶ 46-47). Essential Images and Rockafellow have failed to communicate with Strassman about the status of the property. (Compl. ¶ 47).

### B. New Jersey Superior Court Action

On June 2, 2016, plaintiffs filed an action in the Superior Court of New Jersey, asserting claims against Essential Images, John W. Rockafellow, and Sally Rockafellow. (Def. Ex. B). The complaint included eight counts under New Jersey law for alleged violations of the New Jersey Consumer Fraud Act, breach of contract, violations of good faith and fair dealing, misrepresentation,

4

common law fraud, promissory estoppel, conversion, conspiracy to commit a tort, and aiding the commission of a tort. (Def. Ex. B).

On September 30, 2016, Judge Camille M. Kenny of the Superior Court of New Jersey dismissed plaintiffs' complaint, with prejudice, as to all claims by the Robert H. Strassman Revocable Trust. (Def. Ex. C). At the motion hearing, Judge Kenny stated that New Jersey courts did not have personal jurisdiction over the claims arising from the Trust. (Pl. Ex. A).

Judge Kenny dismissed Strassman's personal claims against defendants without prejudice; she would have permitted Strassman to submit a new complaint to pursue causes of action on his own behalf. (Def. Ex. C). Plaintiffs filed a motion for reconsideration, which was denied by Judge Kenny on November 18, 2016. (Def. Ex. D).

### C. Filing in Federal Court

On June 12, 2017, Strassman and the Trust filed this action in federal court against Essential Images, John W. Rockafellow, and Sally Rockafellow. (Compl.). The complaint alleges thirty counts under New Jersey, Pennsylvania, Virginia, and Washington, D.C. law.

Under New Jersey law, plaintiffs allege violations of the New Jersey Consumer Fraud Act, breach of contract, violation of good faith and fair dealing, misrepresentation, common law fraud, promissory estoppel, conversion, breach of quasi-contract, breach of fiduciary duty, conspiracy to commit a tort, and aiding the commission of a tort. (Compl. ¶¶ 48-98). Under Pennsylvania law, plaintiffs allege violations of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, breach of contract, unjust enrichment, breach of fiduciary duty, common law fraud, conversion, and conspiracy. (Compl. ¶¶ 99-127). Under Virginia law, plaintiffs allege violations of the Virginia Consumer Protection Act, breach of contract, common law fraud, negligent misrepresentation, conversion, and breach of quasi-contract. (Compl. ¶¶ 128-155). Under Washington, D.C. law, plaintiffs allege breach of contract, violation of good faith and fair dealing, negligent misrepresentation, common

5

law fraud, unjust enrichment, breach of fiduciary duty, and violations of the District of Columbia Consumer Protection Procedures Act. (Compl. ¶¶ 156-88).

Defendants have moved to dismiss this action on the grounds of collateral estoppel. They argue that the New Jersey Superior Court's dismissal bars plaintiffs from relitigating the issue of personal jurisdiction. In the alternative, defendants claim that this complaint does not fulfill basic pleading requirements because it fails to differentiate Strassman's individual claims from those asserted on behalf of the Trust. (Def. Br. 1-2, 6-13). Plaintiffs argue in the alternative that if collateral estoppel prevents them from relitigating the issue of personal jurisdiction, the action should be transferred to an appropriate venue. (Pl. Br. 22-23).

## II. LEGAL STANDARD

Issue preclusion "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). "[T]he principle is simply that later courts should honor the first actual decision of a matter that has been actually litigated." 18 Wright & Miller, *Federal Practice & Procedure* § 4416 (3d ed. 2016). This doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *Burlington N. R.R. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995).

A district court sitting in diversity applies the collateral estoppel rules of the state in which it sits. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). In New Jersey,

> Collateral estoppel, which is also known as issue preclusion, prohibits relitigation of issues if its five essential elements are met. Those elements are that (1) the issue to be precluded is identical to

6

the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Allen v. V & A Bros., Inc.*, 26 A.3d 430, 444 (N.J. 2011) (citations omitted).

The underlying principles of issue preclusion include securing peace for the parties and promoting the court's efficient resolution of claims. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Thus issue preclusion is concerned with "the defendant's interest in avoiding the burdens of twice defending a suit," and also "the avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412-13 (2000) (citing *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). Moreover, as the first Justice Harlan long ago explained, issue preclusion is necessary for courts to function as effective tribunals:

> This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 49 (1897).

### III. DISCUSSION

Defendants claim that, as to the claims on behalf of the Trust, the issue of personal jurisdiction has already been conclusively decided by the Superior Court of New Jersey and cannot be relitigated here. Defendants also argue that Strassman's individual claims fail to state a claim upon which relief may be granted.

7

## A. Collateral Estoppel/Personal Jurisdiction

In a diversity action such as this, the law of the state in which the district court sits determines whether a nonresident defendant is subject to the court's personal jurisdiction. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981); *Database Am. v. Bellsouth Advert. & Publ'g Corp.*, 825 F. Supp. 1195, 1207 (D.N.J. 1993). Accordingly, this court applies New Jersey law to decide questions of personal jurisdiction. Personal jurisdiction in New Jersey is governed by New Jersey Court Rule 4:4–4, the New Jersey long-arm statute. Judge Kenny of the New Jersey Superior Court dismissed the state-court complaint regarding all claims from the Virginia-based Trust, finding that the Superior Court lacked personal jurisdiction over claims arising from the Trust.

I first analyze whether Judge Kenny's prior determination that the New Jersey Superior Court lacks personal jurisdiction over defendants (regarding the Trust's claims) precludes that issue from being relitigated. As discussed in Part II, a collateral-estoppel analysis involves five essential elements: (1) whether the issue to be precluded is identical to the issue decided in the prior proceeding; (2) whether the issue was actually litigated in the prior proceeding; (3) whether the court in the prior proceeding issued a final judgment on the merits; (4) whether the determination of the issue was essential to the prior judgment; and (5) whether the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *See Allen v. V & A Bros., Inc.*, 26 A.3d 430, 444 (N.J. 2011) (citations omitted).

### i. Identical Issue

In the prior proceeding, Judge Kenny of the Superior Court of New Jersey dismissed, with prejudice, the claims involving the Virginia-based Trust for lack of personal jurisdiction. In this action, the plaintiffs again assert claims on behalf of the Trust (and Strassman). The identical issue is presented—whether

8

New Jersey can exercise personal jurisdiction over claims arising from defendants' interactions with the Trust.

This court explained in *Kitces v. Wood* that principles of collateral estoppel apply to the issue of personal jurisdiction just as they do to other issues:

> The principles of collateral estoppel apply with equal force to a prior determination by a court that it lacks personal jurisdiction over a party. Therefore, once a New Jersey state court has concluded that it lacks personal jurisdiction over a party, that jurisdictional issue cannot be relitigated in this Court.

917 F. Supp. 338, 341 (D.N.J. 1996); *see also Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525-26 (1931) (adjudication of personal jurisdiction issue precludes subsequent relitigation of same issue).

The New Jersey Supreme Court has identified several factors to consider when evaluating the similarity of issues for purposes of collateral estoppel:

> In deciding the similarity of issues for issue preclusion purposes, a court should consider whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related.

*First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007) (citations omitted). First, in this case, the arguments and evidence regarding personal jurisdiction are substantially the same. Second, it is clear that the governing rules of law are identical: "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted); *see also Braman v. Mary Hitchcock Mem'l Hosp.*, 631 F.2d 6, 8 (2d Cir. 1980) (holding that "[t]he district court correctly considered itself to be bound by the state court construction of the long-arm statute"). Third, any jurisdictional discovery ordered by the Superior Court of New Jersey would

9

parallel or encompass any jurisdictional discovery ordered by this court. *See Wallace v. Keystone Printed Specialties Co., Inc.*, No. 14-cv-5978, 2016 WL 5403088, at *5 (D.N.J. Sept. 27, 2016); *see also 1 Five 0, Inc. v. A. Schulman, Inc.*, No. 99-cv-354E(SC), 2000 WL 744003, at *2 (W.D.N.Y. June 5, 2000). Finally, the claims asserted are closely related. While the federal-court complaint contains more detailed factual allegations and alleges violations of different states' laws, the same factual circumstances underlie both complaints. The underlying wrong sounds in conversion and fraud.

The issue on this motion, then, is the same issue decided by Judge Kenny in the prior action. The first element of collateral estoppel has been satisfied.

### ii. Actually Litigated in the Prior Proceeding

The issue of personal jurisdiction was actually litigated in the Superior Court action. New Jersey courts have looked to the Restatement (Second) of Judgments in defining when an issue is "actually litigated" for purposes of collateral estoppel: an issue is actually litigated "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Allesandra v. Gross*, 453 A.2d 904, 909 (N.J. Super. Ct. App. Div. 1982) (quoting Restatement (Second) of Judgments § 27(d)). "[A]n issue may be submitted and determined on a motion to dismiss." *Id.* (quoting Restatement (Second) of Judgments § 27(d)); *see also Wallace*, 2016 WL 5403088, at *5-6.

The issue of personal jurisdiction was presented to the Superior Court of New Jersey, the court held a hearing on the issue, and then it dismissed the claims arising from the Trust for lack of personal jurisdiction. The second element of collateral estoppel is thus satisfied.

### iii. Final Judgment on the Merits

While a dismissal for lack of jurisdiction generally is not "an adjudication on the merits," *see* Fed. R. Civ. P. 41(b) and N.J. Ct. R. 4:37-2(d), courts take a more flexible view of finality in the context of collateral estoppel. *See Wallace*,

10

2016 WL 5403088, at *6. "Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable." *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991). "[T]he doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded preclusive effect.'" *Id.* (citing *Hills Dev. Co. v. Twp. of Bernards*, 510 A.2d 621, 652 (N.J. 1986) (quoting Restatement (Second) of Judgments § 13)). Indeed, "[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts." *Id.* (citation and internal quotation marks omitted). In short, an action does not proceed to a final judgment after it has been dismissed for lack of personal jurisdiction; such a dismissal is as "final" as it is ever going to be.

In this case, Judge Kenny's order dismissing the Trust's claims for lack of personal jurisdiction is "sufficiently firm" to preclude this court from questioning the previously litigated issue. *See Wallace*, 2016 WL 5403088, at *6-7; *Kitces*, 917 F. Supp. at 341-42; *see also* Wright & Miller, 18A *Federal Practice & Procedure* § 4436 (3d ed. 2017) ("Dismissal for want of personal jurisdiction precludes relitigation of the same issue of jurisdiction ...."). Nothing in the order suggests that the dismissal for lack of personal jurisdiction was tentative or subject to change. The hearing transcript shows that Judge Kenny entered that dismissal "with prejudice." Accordingly, the third element of collateral estoppel is met.

### iv. Essential to the Prior Judgment

The determination that New Jersey courts cannot exercise personal jurisdiction over the Trust-based claims was essential to the prior state-court judgment. Judge Kenny dismissed the Trust-based claims precisely and solely because she found that the court lacked personal jurisdiction over those claims. *See Wallace*, 2016 WL 5403088, at *7. Therefore, the fourth element of collateral estoppel is satisfied.

11

### v. Identity of Parties

The fifth element requires that "the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Allen*, 26 A.3d at 444. Here, "the part[ies] against whom the [collateral estoppel] doctrine is asserted" are the plaintiffs. The orders and complaints filed in the Superior Court of New Jersey make clear that the plaintiffs in the state action are the same as the plaintiffs in this federal suit. The fifth element of collateral estoppel is therefore satisfied.

### vi. Fairness Considerations

I find that the miscellaneous "fairness factors," *see Allen*, 26 A.3d at 445, also weigh in favor of applying collateral estoppel here. The fairness factors include the conservation of judicial resources; avoidance of repetitious litigation; and the prevention of waste, harassment, uncertainty, and inconsistency. *Id.* First, applying collateral estoppel in this instance conserves judicial resources by preventing the court from engaging in an analysis of personal jurisdiction. Second, it avoids repetitious litigation. The defendants should not have to defend another lawsuit in New Jersey federal court when the initial suit was dismissed from New Jersey state court for lack of personal jurisdiction. Third, applying the doctrine prevents any potential inconsistencies between the state and federal courts. Other fairness factors include whether

> the party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.

*Id.* There is no indication that the plaintiffs could not have appealed Judge Kenny's prior judgment.[3] The parties were able to avail themselves of the

---

[3] Plaintiffs claim that the Superior Court order was an "interlocutory order," but the order dismissed all of the claims in the case. (The Trust-based claims were dismissed for lack of personal jurisdiction and Strassman's personal claims were

12

procedures and hearings in the state court system. Moreover, the parties foresaw that the issue of personal jurisdiction would arise in the federal court context. Plaintiffs were concerned at the motion for reconsideration stage that the state-court dismissal would have preclusive effect on a future federal-court suit. (Pl. Ex. A. 17:20-23). They argue that Judge Kenny did not want to—and did not believe that she would—bind the federal court with her determination.[4] By that, she seems to have meant nothing more controversial than that the federal court would decide for itself whether it was bound. At any rate, Judge Kenny decided the issue of personal jurisdiction and this same issue is brought before this court. It has already been determined and this court will respect the prior determination.

All five of the collateral-estoppel elements have been met and the fairness factors weigh in favor of the application of that doctrine. Therefore, I find that plaintiffs are precluded from asserting that this Court may exercise personal jurisdiction over plaintiffs with regard to the Trust-based claims.

### vii. Out-of-Circuit Case Law

Plaintiffs cite two out-of-circuit cases for the proposition that a prior state-court ruling on personal jurisdiction does not have collateral-estoppel effect. Those cases are distinguishable and do not dictate a similar result here.

First, in *Pohlmann v. Bil-Jax, Inc.*, the Eighth Circuit found that a Missouri appellate-court determination "that the trial record did not establish the trial court's personal jurisdiction over [defendant]" was not a jurisdictional finding of lack of personal jurisdiction. 176 F.3d 1110, 1113 (8th Cir. 1999). In

---

dismissed for failure to sufficiently plead). Although Strassman had leave to amend his personal claims, he was not required to do so; he could have rested on his complaint and appealed from the order of dismissal. The matter could have been appealed to the Appellate Division. *See, e.g., Baanyan Software Servs., Inc. v. Kuncha*, 81 A.3d 672 (N.J. Super. Ct. App. Div. 2013); *Jacobs v. Walt Disney World, Co.*, 707 A.2d 477 (N.J. Super. Ct. App. Div. 1998).

4    Judge Kenny stated at the motion hearing, "I don't bind Federal Courts. The Federal Judges will do as they see fit. If they have a question about New Jersey law, they will certify it over to much higher authorities than me." (Pl. Ex. A. 17:20-23).

this case, by contrast, the state trial court explicitly ruled, at a merits hearing, that New Jersey courts lacked personal jurisdiction over the Trust-based claims. *Pohlman* was also complicated by an issue over whether the court possessed jurisdiction over the person of the defendant at the time the suit was commenced in 1993, as opposed to the date of commencement of the second action in 1997. *Id.* at 1112. No such change of circumstances has been identified or is likely in this matter, where the plaintiffs filed the Superior Court action on June 2, 2016 and the federal court action on June 12, 2017. (Def. Ex. B; Compl.).

Second, in *Barrett v. Tema Development (1988), Inc.*, the Southern District of New York denied collateral estoppel because it found that the state-court and federal-court actions were based on different causes of action and had different underlying facts. 463 F. Supp. 2d 423, 428 (S.D.N.Y. 2006). Thus in state court the plaintiff alleged conversion, but in federal court alleged breach of contract and breach of fiduciary duty. *Id.* Here, when filing in this Court, the plaintiffs added claims under other states' laws, but they retained the same New Jersey claims and did not allege different facts. There is nothing to indicate that the additional causes of action involved different jurisdiction-creating facts with respect to New Jersey.

### B. Change of Venue

Plaintiffs argue in the alternative that if Judge Kenny's order estops them from asserting the Trust-based claims against defendants, this court should transfer this action to an appropriate venue that does possess jurisdiction. (Pl. Br. 22-23). I agree.

Title 28, United States Code § 1406 permits transfers to cure defects:

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Moreover, 28 U.S.C. § 1631 provides:

14

> Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ..., and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

Thus the court has the power to transfer the action to another federal district court if the action originally could have been brought there, and if it finds such a transfer to be in the interest of justice. *See Chicosky v. Presbyterian Med. Ctr.*, 979 F. Supp. 316, 319-20 (D.N.J. 1997); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) (where plaintiff had accidentally filed suit in wrong district and statute of limitations had run, interest of justice required transfer pursuant to section 1406, rather than dismissal and finding that section 1406(a) exists to "remove whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits"); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 284 (3d Cir.1994) (if plaintiff on remand could not establish personal jurisdiction, district court should consider whether transfer under sections 1406 or 1631 is appropriate); *1 Five 0, Inc. v. A. Schulman, Inc.*, No. 99-cv-354E(SC), 2000 WL 744003, at *2-3 (W.D.N.Y. June 5, 2000).

The court will transfer this case to the Middle District of Pennsylvania.

First, the action originally could have been brought there. Essential Images is domiciled in Littlestown, located in Adam County, which is within the Middle District of Pennsylvania. (Compl. ¶ 11). John W. Rockafellow and Sally Rockafellow are also residents of Pennsylvania (although the locality is not further specified). [5] (Compl. ¶¶ 12-13). Per 28 U.S.C. § 1391(b), venue is

---

[5] *See* Court Locator Results, United States Courts, http://www.uscourts.gov/court-locator/city/Littlestown/state/PA/court/district (showing that Littlestown, PA is located in the Middle District of Pennsylvania). Plaintiffs suggest transfer to the Eastern District of Pennsylvania (Pl. Br. 22-23), but they do not plead any facts

15

appropriate in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

Second, a transfer, as opposed to dismissal, is in the interest of justice. A transfer may avoid potential problems under applicable statutes of limitations that would not have arisen if the action had been originally filed in Pennsylvania. The Pennsylvania Unfair Trade Practice and Consumer Protection Law, for example, has a six-year statute of limitations. *See Gabriel v. O'Hara*, 534 A.2d 488, 496 (Pa. 1987). Pennsylvania also permits a plaintiff to employ theories of estoppel (or fraudulent concealment) to extend other applicable statute of limitations. *See Fine v. Checchio*, 870 A.2d 850, 860 (Pa. 2005).[6]

In addition, the defendants are located in Pennsylvania. The costs of prosecuting and defending the action are not likely to rise significantly for the parties involved if the action is transferred there. And finally, there is no indication that the filing in New Jersey was anything other than a good faith mistake. *See Chicosky*, 979 F. Supp. at 321-22.

Therefore, since it appears that the action could have been filed in Pennsylvania in the first instance, and that a transfer would be in the interest of justice, this action will be transferred to the Middle District of Pennsylvania.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs cannot relitigate here whether New Jersey courts can exercise personal jurisdiction over defendants regarding the Trust-based causes of action. That issue is barred by collateral estoppel. In the

---

suggesting that Essential Images, John W. Rockafellow, or Sally Rockafellow is a resident of that district.

6    The U.S. District Court for the Middle District of Pennsylvania may, of course, make its own determination on a more complete record regarding the statute of limitations. *See Chicosky*, 979 F. Supp. at 321.

interest of justice, this case will be transferred to the Middle District of Pennsylvania.

An appropriate order accompanies this opinion.

Dated: March 9, 2018

KEVIN MCNULTY
United States District Judge